IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LEONARDO VASQUEZ, | § | |
| Movant, | § | |
| | § | EP-05-CA-0380-DB |
| v. | § | EP-03-CR-1956-DB |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Movant Leonardo Vasquez's ("Vasquez") "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("Motion to Vacate") [Docket No. 83].[1] Therein, Vasquez challenges his concurrent 188-month prison sentences for conspiracy and possession of marijuana. Vasquez asserts his trial counsel provided ineffective assistance at his sentencing hearing. In its "Response to Motion to Vacate" [Docket No. 86], Respondent (hereafter, "the Government") argues Vasquez "can not show that his counsel were constitutionally ineffective, nor can he show that he was prejudiced."[2] Accordingly, the Government prays that the Court deny Vasquez relief. In his "Objections to Government Response" [Docket No. 87], Vasquez reasserts his ineffective-assistance-of-counsel claims. After reviewing the record and for the reasons discussed below, the Court concludes Vasquez has failed to establish his entitlement to relief pursuant to § 2255, and will accordingly dismiss his civil cause with prejudice. The Court will additionally deny Vasquez a certificate of appealability.

---

[1] "Docket" in this context refers to the criminal docket in cause number EP-03-CR-1956-DB.

[2] Gov't's Resp. to Mot. to Vacate [Docket No. 86] at 10.

I. **BACKGROUND**

   *A.     United States v. Vasquez, Criminal Cause No. EP-03-CR-1956-DB*

On September 28, 2003, Border Patrol agents noted sensor activity along the border with Mexico near Ysleta, Texas. Agents proceeded to the site and observed five people running northbound with packs strapped to their backs. A short time later, they watched two more individuals assist the backpackers. Upon seeing the agents, the seven people dropped the packs and ran for the border. Agents stopped and arrested six individuals, including Vasquez, before they could escape. A subsequent search of the backpacks disclosed they contained approximately 180 kilograms of marijuana. Agents also discovered a Jeep parked nearby. Vasquez told the agents he had received a telephone call that morning and agreed to take the Jeep, drive it to the border, and pick up some illegal aliens. Vasquez did not admit that he knew the aliens would be carrying marijuana. A grand jury sitting in the Western District of Texas, El Paso Division, subsequently returned a two-count indictment charging Vasquez and four others with conspiring to possess 100 kilograms or more of a mixture containing marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii) ("Count One"); and possessing with the intent to distribute 100 kilograms or more of a mixture containing marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vii) ("Count Two").

Vasquez elected to forego trial, choosing instead to plead guilty to both counts without a plea agreement. Vasquez appeared before a United States Magistrate Judge with his trial counsel, Assistant Federal Public Defender Michael Pariente ("Pariente"), to enter his plea. Based on the information provided at the hearing and Vasquez's responses to the administration

of the guilty plea under Federal Rule of Criminal Procedure 11,[3] the Magistrate Judge found "[t]he Defendant's plea was made freely, knowingly, and voluntarily."[4] Accordingly, the Magistrate Judge recommended that the Court accept the plea. The Court thereafter approved and adopted the Magistrate Judge's findings and recommendations, and accepted Vasquez's guilty plea.

At the time of his sentencing hearing, Vasquez had two prior felony convictions. In cause number EP-94-CR-300, Vasquez pleaded guilty, pursuant to a plea agreement, to using a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c). According to the factual basis accompanying the plea agreement, Vasquez admitted he helped deliver cocaine in exchange for a semi-automatic pistol.

> . . . . [Co-Defendant] Mario Ulloa suggested a meeting at the Whataburger located on George Dieter at 3:00 p.m. [El Paso County Metro Narcotics Task Force Investigator] Cubillos and Special Agent Munson arrived at the Whataburger at approximately 3:14 p.m. At that time they saw Mario Ulloa and the defendant, Leonardo Vasquez, Jr. Mario Ulloa showed the cocaine to Cubillos and Cubillos told him to follow him to a house located at 1366 Vista Granada, El Paso, Texas to deliver the firearms. Mario Ulloa and Vasquez, with Vasquez driving followed in a black Ford Taurus. Special Agent Munson left with the cocaine.
> When Mario Ulloa and Vasquez arrived at the Vista Granada house, Cubillos had them go inside the house by way of the garage door. Once inside the garage, [Bureau of Alcohol, Tobacco and Firearms] Special Agent Olmos took over the conversation. Olmos showed both

---

[3] *See United States v. Vonn*, 535 U.S. 55, 62 (2002) ("Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant."); *United States v. Gracia*, 983 F.2d 625, 627 (5th Cir. 1993) (explaining compliance with the admonishments required under Rule 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea.").

[4] Rep. & Rec. of Magis. J. [Docket No. 47] at 2.

> Mario Ulloa and Vasquez the various firearms . . . Olmos explained the firearms as both Mario Ulloa and Vasquez handled the firearms. Olmos then gave the pre-arranged arrest signal.
> After his arrest, Vasquez gave a statement in which he admitted that he knew he was helping deliver cocaine.[5]

In cause number EP-01-CR-1607, Vasquez pleaded guilty, again pursuant to a plea agreement, to importing marijuana into the United States, in violation of 21 U.S.C. § 952(a). In the factual basis attached to the plea agreement, Vasquez admitted he knew before applying for admission into the United States that the vehicle he was driving from Mexico contained approximately 35 kilograms of marijuana concealed under the dashboard.

Because Vasquez had two prior felony convictions, the Court classified him as a career offender.[6] The Court explained, "[t]he Base Offense Level . . . is 34 based on the two prior felonies. He gets 3 off for acceptance. Makes him a 31 with a Criminal History Category of VI, as a career offender."[7] The Court sentenced Vasquez to concurrent 188-month terms of imprisonment followed by concurrent five-year terms of supervised release in cause number EP-03-CR-1956-DB. Additionally, the Court revoked Vasquez's supervised release in cause number EP-01-CR-1607, and sentenced him to an additional eighteen-month term of imprisonment.

---

[5] Gov't's Resp. to Mot. to Vacate [Docket No. 86], Ex. E, Plea Agreement, Factual Basis.

[6] *See* U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(a) (2004) ("A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.").

[7] Gov't's Resp. to Mot. to Vacate [Docket No. 86], Ex. B, Sentencing & Revocation Transcript, at 3.

B.  *United States v. Vasquez*, No. 04-50198, 101 Fed. Appx. 478 (5th Cir. Jun. 23, 2004)

Vasquez appealed his guilty-plea conviction for conspiracy to possess and possession with the intent to distribute 100 kilograms or more of marijuana in cause number EP-03-CR-1956-DB. He argued that the sentencing provision of 21 U.S.C. § 841(b)(1)(B) was unconstitutional in light of *Apprendi v. New Jersey*.[8] Vasquez conceded the Fifth Circuit Court of Appeals' opinion in *United States v. Slaughter*[9] foreclosed his argument.[10] He averred he raised the issue only to preserve it for Supreme Court review. The Fifth Circuit responded by explaining "[a] panel of this court cannot overrule a prior panel's decision in the absence of an intervening contrary or superseding decision by this court sitting en banc or by the United States Supreme Court."[11] Accordingly, the Fifth Circuit affirmed the Court's judgment. The Supreme Court then denied Vasquez's petition for writ of certiorari on November 1, 2004.[12]

C.  *Vasquez's Motion to Vacate*

The Court has liberally read Vasquez's Motion to Vacate, as *Haines v. Kerner* requires.[13] It understands Vasquez to claim Pariente provided constitutionally ineffective assistance at his

---

[8] *See* 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

[9] *See* 238 F.3d 580, 581-82 (5th Cir. 2000) (holding Supreme Court's decision in *Apprendi* did not render federal drug statutes unconstitutional on their face).

[10] *United States v. Vasquez*, 101 Fed. Appx. 478, 479 (5th Cir. 2004).

[11] *Id.*

[12] *Vasquez v. United States*, 543 U.S. 972 (2004).

[13] 404 U.S. 519, 520 (1972).

sentencing because he failed to argue (1) the presentence investigation report over-represented his criminal history because his prior § 924(c) offense was not a crime of violence; (2) the Court should consider unnamed "mitigating circumstances" not taken into account by the United States Sentencing Commission; and (3) he did not "use" the firearm or exercise "dominion and control" over the firearm in connection with his prior § 924(c) conviction.

Before analyzing the merits of Vasquez's claims, the Court will first consider the applicable legal standards.

## II. LEGAL STANDARD

### A. *28 U.S.C. § 2255*

After a defendant has been convicted and exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted."[14] Accordingly, "'[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'"[15] Typically, before a court will grant relief pursuant to § 2255, the movant must establish "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack."[16]

---

[14] *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)).

[15] *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)).

[16] *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal.[17] When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a movant must either (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error; or (2) show that he is "actually innocent" of the crime for which he was convicted.[18] The cause-and-actual-prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal."[19] If the movant does not meet either burden, then he is procedurally barred from attacking his conviction or sentence.[20] This procedural bar does not apply, however, to claims which could not have been raised on direct appeal, such as those alleging ineffective assistance of counsel.[21]

B.   *Ineffective Assistance of Counsel*

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions.[22] Moreover, "the right to

---

[17] *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991).

[18] *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999).

[19] *Gaudet*, 81 F.3d at 589.

[20] *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992).

[21] *See United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992) (stating the general rule in the Fifth Circuit is that, except in rare instances where the record on direct appeal is adequate to evaluate such a challenge, an ineffective assistance of counsel claim cannot be resolved on direct appeal because no opportunity existed for the parties to develop the record on the merits of the allegations).

[22] U.S. CONST. amend. VI.

counsel is the right to the effective assistance of counsel."[23] "[I]neffective assistance claims ordinarily are brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal."[24] To merit relief on an ineffective assistance of counsel claim, a movant must demonstrate both (1) his "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense."[25] A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective.[26]

The test's performance prong centers on whether counsel's assistance was reasonable, considering all the circumstances at the time of counsel's conduct.[27] In order to obtain relief, a movant must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[28] In assessing whether a particular counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances,

---

[23] *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

[24] *Gaudet*, 81 F.3d at 589 n.5.

[25] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review).

[26] *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

[27] *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

[28] *Id.* at 687.

the challenged action 'might be considered sound trial strategy.'"[29] A deficiency in counsel's performance, even if professionally unreasonable, does not equal ineffective assistance of counsel; the movant must also demonstrate actual prejudice.[30] The test's prejudice prong requires the movant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[31]

With these principles in mind, the Court turns to the merits of Vasquez's claims.

### III. ANALYSIS

As a threshold matter, the Court notes Vasquez's Motion to Vacate essentially represents a backdoor attempt to challenge the Court's application of certain Sentencing Guidelines. A movant may not make such an attack in a § 2255 proceeding if he could have raised his challenge on direct appeal.[32] Moreover, a claim based on alleged miscalculations or misapplications of the Sentencing Guidelines is not a constitutional claim cognizable under § 2255.[33] Accordingly, to

---

[29] *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[30] *See id.* at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.").

[31] *Id.* at 694.

[32] *United States v. Perez*, 952 F.2d 909, 909-10 (5th Cir. 1992).

[33] *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (explaining misapplications of the Sentencing Guidelines are not cognizable in § 2255 motions); *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996) (holding a claim that the district court improperly applied the Sentencing Guidelines was not cognizable in a motion to vacate); *United States v. Faubion*, 19 F.3d 226, 232 (5th Cir. 1994) (holding a defendant's claim that district court erred in making upward departure under Sentencing Guidelines could not be considered in a § 2255 motion); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996) (holding that a district court's calculation under or application of the Sentencing

the extent Vasquez attempts to directly challenge the Court's sentence, the Court finds it should summarily reject his claim. Nevertheless, to the extent Vasquez alleges his concurrent 188-month sentences resulted from Pariente's ineffective assistance, the Court will examine the merits of Vasquez's claims.

Vasquez first claims Pariente provided constitutionally ineffective assistance at his sentencing hearing when he failed to argue the presentence investigation report over-represented his criminal history. More specifically, Vasquez claims Pariente ignored his instructions to argue he was not a career offender because his prior conviction for use of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c), did not qualify as a crime of violence.

At the time the Court sentenced Vasquez, Sentencing Guideline § 4B1.1(a) explained "[a] defendant is a career offender if . . . the instant offense . . . is . . . a controlled substance offense[] and . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."[34] The application notes for Sentencing Guideline § 4B1.2 added "[a] violation of 18 U.S.C. 924(c) . . . is a 'crime of violence' or a 'controlled substance offense' if the offense of conviction established that the underlying offense was a 'crime of violence' or a 'controlled substance offense.'"[35] When Congress enacted § 924(c), it recognized a correlation between drugs and violence.[36] In holding that "a criminal who trades his firearm for drugs 'uses' it . . . within the meaning of § 924(c)(1)," the Supreme Court explained "[t]he fact that a gun is treated momentarily as an item of commerce does not render it inert or deprive it of destructive

---

Guidelines standing alone is not the type of error cognizable under § 2255); *United States v. Sigeler*, 37 F.3d 1131, 1134 (5th Cir. 1994) (holding that "a district court's technical application of the Sentencing Guidelines does not give rise to a constitutional issue cognizable under section 2255.").

[34] U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(a) (2004).

[35] U.S. SENTENCING GUIDELINES MANUAL § 4B1.2 application notes (2004).

[36] *See Smith v. United States*, 508 U.S. 223, 240 (1993) ("In 1989, 56 percent of all murders in New York City were drug related; during the same period, the figure for the Nation's Capital was as high as 80 percent.").

capacity. Rather, as experience demonstrates, it can be converted instantaneously from currency to cannon."[37] Accordingly, existing precedent more than justified the Court's inclusion of Vasquez's § 924(c)(1) conviction as a predicate offense for the sentence enhancement.[38] Any argument concerning over-representation of his criminal history would have been unavailing. An attorney's assistance cannot be ineffective for failing to raise a what, at the time, appeared to be a meritless claim.[39]

Vasquez next avers Pariente failed to present "mitigating circumstances" not taken into account by the United States Sentencing Commission. Vasquez does not specificity which factual or legal aspects of his case would have mitigated his sentence. Pariente states he was unaware of any mitigating circumstances which would have lowered Vasquez's sentence.[40] While the Court must construe a *pro se* § 2255 motion liberally, conclusory allegations are insufficient to raise cognizable ineffective assistance of counsel claims.[41]

Finally, Vasquez contends Pariente provided ineffective assistance when he failed to argue the Court should not consider Vasquez's 1995 conviction for violating § 924(c) in determining whether he was a career offender because he did not "use" the automatic pistol or exercise "dominion and control" over it. When the Court sentenced Vasquez, Fifth Circuit

---

[37] *Id.* at 240-41.

[38] *See United States v. Stephens*, 237 F.3d 1031, 1034 (9th Cir. 2001) (recognizing that carrying a gun in connection with a drug trafficking offense qualifies as a violent felony under the Armed Career Criminal Act).

[39] *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir.1995); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

[40] Gov't's Resp. to Mot. to Vacate [Docket No. 86], Ex. D, Aff. of Michael Pariente.

[41] *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("'In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial, we [can find] no merit to these [claims].'") (quoting *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992)).

precedent clearly held that bartering drugs for a firearm involved the weapon's "use" during a drug trafficking offense and violated § 924(c).[42] When Vasquez's co-defendant made the same challenge in his direct appeal, the Fifth Circuit explained "[b]y bartering drugs for firearms, Ulloa 'actively employed' the firearms, because they were an 'operative factor' in the drug trafficking offenses: Ulloa required that he be furnished firearms in exchange for his drugs. Ulloa thus 'used' the firearms within the meaning of § 924(c)(1)."[43] The Supreme Court recently rejected this reasoning and held in *Watson v. United States* that a defendant does not "use" a firearm for the purposes of § 924(c) when he receives it in trade for drugs.[44] When a Supreme Court decision results in a "new rule," that rule applies to all criminal cases still pending on direct review.[45] While a new substantive rule that interprets and narrows the scope of a criminal statute generally applies retroactively,[46] "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas."[47] A defendant

> assumes the risk of ordinary error in either his or his attorney's assessment of the law. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel

---

[42] *United States v. Zuniga*, 18 F.3d 1254, 1259 (5th Cir. 1994) (holding that bartering drugs for weapons constitutes "use" within the context of § 924(c)).

[43] *United States v. Ulloa*, 94 F.3d 949, 956 (5th Cir. 1996), *abrogated by Watson v. United States*, __ U.S. __, __, 128 S. Ct. 579, 581 (2007) (holding a person does not "use" a firearm under 18 U.S.C. § 924(c)(1)(A) when he receives it in trade for drugs).

[44] *Watson*, __ U.S. at __, 128 S. Ct. at 581.

[45] *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)).

[46] *Bousley v. United States*, 523 U.S. 614, 620-621 (1998).

[47] *United States v. Timmreck*, 441 U.S. 780, 784 (1979).

sufficient to show that his plea was not, after all, a knowing and intelligent act.[48]

The Court finds Pariente competently advised Vasquez on the law as it was understood before the Supreme Court's 2007 *Watson* decision. Generally, counsel is not ineffective for failing to anticipate future changes in the law; counsel is not required to be clairvoyant.[49] Accordingly, the change in § 924(c)'s interpretation does not render Pariente's earlier advice erroneous or incompetent. Considering all the circumstances at the time of Vasquez's sentencing,[50] Pariente's performance can hardly be faulted for not making the argument at the sentencing hearing and failing to pursue an appeal on this ground.

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."[51] Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[52] In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted.[53]

---

[48] *McMann v. Richardson*, 397 U.S. 759, 774 (1970).

[49] *United States v. Cooks*, 461 F.2d 530, 532 (5th Cir. 1972).

[50] *See Strickland*, 466 U.S. at 688.

[51] 28 U.S.C.A. § 2253(c)(1)(B) (West 2007).

[52] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).

[53] *See* 28 U.S.C.A. §2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters); *see also Lackey*, 116 F.3d at 151 (holding that a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *but see United States v. Kimler*, 150 F.3d 429, 431 and 431 n.1 (5th Cir. 1998) (explaining the Fifth Circuit may address an issue not certified by the district court if the movant makes (1) an explicit request; and (2) a substantial showing of the denial of a constitutional right).

Although Vasquez has not yet filed a notice of appeal, this Court nonetheless may *sua sponte* address whether he is entitled to a certificate of appealability.[54]

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[55] In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[56] To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[57] Here, Vasquez's Motion to Vacate fails because he has not made a substantial showing of the denial of a constitutional right. Accordingly, Vasquez is not entitled to a certificate of appealability.

## V.   CONCLUSION AND ORDER

For the reasons stated, the Court concludes it should deny Vasquez's Motion to Vacate and dismiss his civil cause. The Court further concludes that Vasquez is not entitled to a certificate of appealability. Accordingly, the Court enters the following orders:

---

[54] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (explaining it is appropriate for district court to address *sua sponte* the issue of whether it should grant or deny a certificate of appealability, even before one is requested).

[55] 28 U.S.C.A. § 2253(c)(2).

[56] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings).

[57] *Slack*, 529 U.S. at 484.

1. Movant Leonardo Vasquez's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" [Docket No. 83]. is **DENIED,** and his civil cause is **DISMISSED WITH PREJUDICE**.

2. Movant Leonardo Vasquez is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

3. All pending motions in this cause, if any, are **DENIED AS MOOT.**

**SIGNED** this ___6th___ day of **March 2008.**

_____
DAVID BRIONES
UNITED STATES DISTRICT JUDGE